UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| STACY MARIE CARLILE,              )<br>        Plaintiff,                              )<br>                                                  )<br>        v.                                        )<br>                                                  )<br>KILOLO KIJAKAZI, Acting Commissioner )<br>of the Social Security Administration,    )<br>        Defendant.                            ) | CAUSE NO.: 2:20-CV-413-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Stacy Marie Carlile on November 17, 2020, and Stacy Marie Carlile's Memorandum in Opposition to Commissioner's Decision [DE 15], filed June 2, 2021. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On July 14, 2021, the Commissioner filed a response, and Plaintiff filed her reply on August 14, 2021. For the foregoing reasons, the Court remands the Commissioner's decision.

**I.     Background**

On March 25, 2019, Plaintiff filed an application for benefits alleging that she became disabled on August 2, 2018. Plaintiff's application was denied initially and upon consideration. On June 3, 2020, Administrative Law Judge ("ALJ") Edward Kristof held a hearing at which Plaintiff, along with an attorney and a vocational expert ("VE"), testified. On June 16, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2021.

2.  The claimant has not engaged in substantial gainful activity since August 2,

2018, the alleged onset date.

3. The claimant has the following severe impairments: residuals of multiple injuries sustained in 2010 motorcycle accident, including multiple pelvic fractures, status-post ORIF of left anterior column acetabular fracture and symphysis, sacral fracture, status-post ORIF of sacral 2 and S3 fragments and posterior sacral laminectomy with decompression of the right S1 nerve root, right ankle fracture, status-post ORIF, and fracture of fifth finger of left hand; lumbar postlaminectomy syndrome; obesity; obstructive sleep apnea (OSA) with use of CPAP; post-traumatic stress disorder (PTSD); major depressive disorder; generalized anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant requires opportunity to change positions between sitting and standing, and vice versa, every thirty (30) minutes; the claimant can never crawl or climb ladders, ropes, or scaffolds; the claimant is capable of occasional balancing, stooping, kneeling, and crouching; the claimant is unable to use foot controls; the claimant is limited to no more than frequent handling with the bilateral upper extremities; the claimant is limited to no more than occasional overhead reaching; the claimant is limited to no more than frequent reaching in all other directions with the non-dominant left upper extremity; the claimant must avoid concentrated exposure to wetness, vibration, and hazards (such as wet slippery surfaces, dangerous moving machinery, and unprotected heights); the claimant is unable to operate motorized vehicles as part of her work duties; the claimant can understand, remember, and carry out detailed but not complex tasks, and manage the stresses involved in such tasks; the claimant is limited to no more than occasional interaction with the public, but nothing more involved than answering a discrete question, such as the location of an item in a store or a room in a hotel; the claimant is limited to no more than occasional interaction with co-workers, and cannot perform tandem work or team tasks.

6. The claimant is unable to perform any past relevant work.

7. The claimant was a younger individual age 18-44 on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 2, 2018 through the date of this decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 16]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment

for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ erred in not deferring to the treating nurse practitioner's opinion but rather deferring to the non-treating state agency opinions. Plaintiff further argues that the ALJ made medical determinations he is not qualified to make. Finally, Plaintiff argues that the ALJ's credibility findings are not supported by the record. The Commissioner argues that, for claims filed after March 27, 2017, like Plaintiff's claim, the opinion of treaters is not entitled to greater deference than any other opinion of a medical provider, citing 20 C.F.R. § 404.1520c. The Commissioner further argues that the medical record supported the ALJ's medical conclusions as well as his assessment of Plaintiff's symptoms.

Plaintiff argues that the ALJ failed to give the treating medical professional's opinion sufficient weight. She asserts that the ALJ failed to properly analyze the opinion of Jennifer Emmert, Plaintiff's treating nurse practitioner, and notes that the ALJ refers to Ms. Emmert as Nurse Emmert rather than Nurse Practitioner Emmert, thereby implying that her opinion is entitled to less weight than other medical professional's opinions. Ms. Emmert, as a nurse practitioner, is considered an acceptable medical source under the regulations in effect at the time Plaintiff's claim was filed. 20 C.F.R. § 416.902(a)(7). Since Ms. Emmert is an acceptable medical source, the ALJ must articulate his consideration of the medical opinion. The ALJ considers five factors when considering medical opinion evidence. Those five factors are: supportability; consistency; relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship); specialization; and other factors. 20 C.F.R. § 416.920(c). The most important factors are supportability and consistency, and the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions … in

[the] determination or decision." 20 C.F.R. § 416.920(b)(2).

As this case was filed after March 27, 2017, the ALJ is no longer required to "give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record," *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2)) (replaced by 20 C.F.R. § 404.1520c for claims filed after March 27, 2017); but he is still required to analyze a number of factors and thoroughly explain the weight given their opinion. 20 C.F.R. § 404.1520c. Ms. Emmert's opinion is therefore entitled to no more deference than the opinions of other medical professionals. 20 C.F.R. § 404.1520c.

The ALJ found that Plaintiff's impairments from a 2010 motorcycle accident, including pelvic fractures, acetabular fracture and symphysis, sacral fracture, fragments and laminectomy with decompression of the right S1 nerve root, ankle fracture, left hand fracture, obesity, obstructive sleep apnea (OSA), post-traumatic stress disorder (PTSD), major depressive disorder and generalized anxiety disorder constituted a severe impairment, which means it is "an impairment or combination of impairments that significantly limits one's physical or mental ability to do basic work activities." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting 20 C.F.R. § 404.1520(c)) (quotation marks omitted). Plaintiff's treating Nurse Practitioner wrote that Plaintiff "can lift no more than 1 gallon of milk." AR 211. She also wrote that Plaintiff has "difficulty with ambulation and with rising from a sitting to standing position," and stated that Plaintiff could sit or stand for less than 2 hours per 8 hour work day, and must periodically alternate sitting and standing to relieve pain or discomfort. *Id*. Nurse Practitioner Emmert opined, "No question that this patient is permanently medically impaired," that Plaintiff had undergone multiple surgeries and an ongoing

6

course of pain management treatment, and that Plaintiff's reports of limitations were consistent with medical records she reviewed. AR 216. The ALJ found this opinion to be

> unpersuasive to the full extent opined. . . .While there is evidence to support some of the limitations opined, the clinical records fail to indicate such significant motor loss that the claimant is unable to life the requirements necessitated by the sedentary exertion level (i.e., a full ten pounds). Furthermore, the final determination as to disability is reserved to the commissioner. Nevertheless, the undersigned has incorporated most of the opined limitations into the residual functional capacity assessed herein.

AR 19-20.

The ALJ has provided no explanation of why he found that that Ms. Emmert' opinion as to the claimant's lifting/carrying limitations of a gallon of milk (approximately 8 pounds) was not supported by the clinical records. The ALJ must "provide a 'logical bridge' between the evidence and his conclusions," and he has failed to do so in this case. *O'Connor-Spinner*, 627 F.3d at 618. The ALJ has not identified any specific evidence that he relied on in discounting Ms. Emmert's opinion but simply states that "the clinical records fail to indicate such significant motor loss that the claimant is unable to lift the requirements necessitated by the sedentary exertion level (i.e., a full ten pounds)." AR 20. The ALJ erred in failing to support the decision with evidence from the record. He provided a long description of the medical evidence in his opinion, AR 16-20, but did not address any of this evidence in his analysis of Ms. Emmert's opinion. AR 19-20. "A list of evidence punctuated with a conclusion does not discharge an ALJ's duty to form a logical bridge between the evidence and [her] conclusion that [Plaintiff] has no marked limitations." *Pimentel v. Astrue*, No. 11 CV 8240, 2013 U.S. Dist. LEXIS 2548, at *25 (N.D. Ill. Jan. 8, 2013); *see also Smith v. Astrue*, No. 02 CV 6210, 2011 U.S. Dist. LEXIS 17691, at *31 (N.D. Ill. Feb. 22, 2011) ("cataloguing [the evidence] is no substitute for analysis or explanation").

The most charitable reading is that the ALJ's determination that a lack of additional invasive

or surgical procedures indicated that Plaintiff was able to lift ten pounds rather than eight pounds is a mistaken reading of the evidence. However, the ALJ is required to rely on expert opinions and should not determine the significance of medical procedures himself. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). To the extent that the ALJ found that the evidence did not support the limitations found by Emmert, he was impermissibly playing doctor.

The ALJ failed to properly analyze what portions of the opinion were either supported or contradicted by which portions of the medical record and impermissibly played doctor. These errors require remand.

This matter is being remanded due to the ALJ's errors in evaluating medical opinion evidence. Plaintiff also argues that the ALJ erred in evaluating Plaintiff's credibility as to her symptoms. On remand, the ALJ is directed to consider all of the medical evidence and opinions in the record. The ALJ should fully consider each of Plaintiff's alleged impairments, alone and in combination, and provide a logical bridge from the evidence to his conclusion.

## VI. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 15] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 15th day of February, 2022.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record